**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**



TEXAS INDIGENOUS COUNCIL and ANTONIO DIAZ,

*Plaintiffs*,

v.

SARGEANT GARY SIMPKINS, et al.,

*Defendants*.

§ Civil Action No. SA-11-CV-315-XR

## ORDER

On this date, the Court considered Defendants' motion for summary judgment. Doc. No. 94. After careful consideration, the motion is GRANTED IN PART and DENIED IN PART. The motion is GRANTED with respect to the claims filed by Texas Indigenous Council, which the Court finds lacks standing. The motion is also GRANTED with respect to Mr. Diaz's claim for injunctive relief. However, the motion is DENIED with respect to Sgt. Simpkin's claim of qualified immunity. For the state law claims, the motion is GRANTED for Plaintiffs' prayer for damages and injunctive relief. However, it is DENIED with respect to Mr. Diaz's prayer for declaratory relief under the Texas Constitution. Accordingly, Mr. Diaz can proceed with this case for damages and declaratory relief against Sgt. Simpkins on his federal constitutional claims. He may also proceed against Sgt. Simpkins for declaratory relief on his state constitutional claims.

## BACKGROUND

The Texas Indigenous Council ("TIC") and Antonio Diaz seek damages, injunctive relief, declaratory relief, and attorneys' fees, alleging that Defendants' enforcement of Texas Penal Code § 42.03 violated their rights guaranteed by the U.S. Constitution.[1] They further assert that the "Defendants' continued enforcement of Penal Code § 42.03[2] through the use and threats of unlawful arrest under similar circumstances will continue to prevent their peaceable use of public sidewalks in San Antonio and chill their exercise thereof." Amended Complaint at ¶ 1.

On April 29, 2009, Plaintiffs allege that Rodolfo Macias was "dragged" from the Mexican Consulate located in San Antonio, Texas, by members of the San Antonio Police Department ("SAPD"). Plaintiffs further allege that Mr. Macias suffered a fractured bone due to ill treatment by the police officers, and was taken to Metropolitan Methodist Hospital by ambulance.

Plaintiffs claim that they peacefully assembled on the public sidewalk outside the main entrance of Metropolitan Methodist Hospital. They allege that they "gathered to observe and ensure that Rodolfo Macias would not be further abused during his custody by the San Antonio police officers." *Id.* at ¶ 6. Plaintiffs assert that they "were purposefully dispersed along the length of the sidewalk so as not to obstruct the use of the sidewalk for passing pedestrians…."

---

[1] Plaintiffs also allege that the Defendants violated Plaintiffs' fundamental free speech and assembly rights under Article I, §§ 8 and 27 of the Texas Constitution.

[2] "(a) A person commits an offense if, without legal privilege or authority, he intentionally, knowingly, or recklessly:

(1) obstructs a highway, street, sidewalk, railway, waterway, elevator, aisle, hallway, entrance, or exit to which the public or a substantial group of the public has access, or any other place used for the passage of persons, vehicles, or conveyances, regardless of the means of creating the obstruction and whether the obstruction arises from his acts alone or from his acts and the acts of others; or

(2) disobeys a reasonable request or order to move issued by a person the actor knows to be or is informed is a peace officer, a fireman, or a person with authority to control the use of the premises:

(A) to prevent obstruction of a highway or any of those areas mentioned in Subdivision (1); or

(B) to maintain public safety by dispersing those gathered in dangerous proximity to a fire, riot, or other hazard.

(b) For purposes of this section, "obstruct" means to render impassable or to render passage unreasonably inconvenient or hazardous."

*Id.* at ¶ 9. They further allege that although Mr. Diaz was carrying a camcorder bag, the bag did not prevent him from keeping the sidewalk free for use. *Id.* at ¶ 10.

Plaintiffs allege that although they "were lawfully and peacefully standing on the public sidewalk and not obstructing its use, Defendants Simpkins, Andrade, Johnson, and Tucker threatened to arrest them for obstructing the sidewalk, in violation of the State "Obstructing Highway or Other Passageway" statute (TEX. PENAL CODE §42.03) because they (a) intentionally obstructed a public sidewalk (§42.03(a)(1)) and (b) disobeyed a reasonable request to move, issued by a peace officer to prevent obstruction of a sidewalk (§42.03(a)(2))." *Id.* at ¶ 13.

Plaintiffs allege that the Defendants "intentionally and wrongly interpreted the ordinance as to the nature of an actual or potential obstruction, and succeeded in compelling Plaintiffs to end their legitimate and constitutionally-protected right of assembly by unlawfully arresting Mr. Diaz and others in the Council." *Id.* at ¶ 14.

Defendants respond that hospital security guards (not SAPD officers) initially approached Plaintiff Diaz and told him that he could not videotape because of HIPPA[3] concerns. Diaz Depo. at p. 57. The security officers thereafter spoke to Defendant SAPD Sgt. Simpkins and complained that several individuals were in front of the emergency room exit doors, videotaping inside the hospital, and impeding pedestrian and vehicular traffic. Mr. Diaz testified that he did not enter the hospital at any time and was not obstructing any sidewalk. Diaz Depo. at p. 62-64.

When Sgt. Simpkins encountered the individuals, they were outside the hospital and moved to the sidewalk when Sgt. Simpkins approached. Doc. No. 94, Ex. B. Sgt. Simpkins warned Plaintiff Diaz that he had already committed a criminal trespass by refusing to leave the

[3] The Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). This Act and its implementing regulations provide protection for the privacy of certain individually identifiable health data, referred to as protected health information.

hospital when told to do so by the hospital security guards. Sgt. Simpkins further warned the group that they were blocking the sidewalk. Twenty minutes later, Sgt. Simpkins advised the group that Mr. Macias was expected to remain in the hospital for a while and told them to leave. They refused and Sgt. Simpkins called for a patrol wagon and additional police. After a final warning to disperse, Plaintiff Diaz and others[4] were arrested by Sgt. Simpkins, Officer Andrade, and Officer Johnson.

On November 21, 2013, Defendants filed this motion for summary judgment alleging that the officers are entitled to qualified immunity and that TIC lacks standing to pursue these claims. Doc. No. 94. A hearing was held on this motion on December 12, 2013. At that time, Plaintiffs confirmed their intention to voluntarily dismiss their claims against Officer Tucker, Officer Johnson and Officer Andrade. In addition, the Court ordered the parties to submit additional briefing by January 6, 2014.

## LEGAL STANDARD

Summary judgment is proper when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-252 (1986). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails . . . to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The court must draw reasonable inferences and construe evidence in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[4] Oscar Jung, Jeannette Jung, Michael Ibanez, Diana Ibanez. Michael Ibanez was arrested for outstanding warrants. See, Affidavit of Officer Dariel Johnson, attached as Exhibit D to Defendants' motion for summary judgment.

Although the evidence is viewed in the light most favorable to the nonmoving party, a nonmovant may not rely on "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence" to create a genuine issue of material fact sufficient to survive summary judgment. *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004).

## DISCUSSION

*1. TIC's Associational Standing*

Sgt. Simpkins argues that TIC lacks standing to pursue any claim. Doc. No. 94. The requirement that a party have standing flows from the Article III requirement that there be a "case or controversy." U.S. CONST. art. III, § 2, cl. 1. Standing analysis focuses on whether "a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy." *Sierra Club v. Morton*, 405 U.S. 727, 732 (1972). To defeat summary judgment, a plaintiff must produce affidavits or other evidence to prove that standing exists and may not rely on mere allegations to support standing. *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 115 n. 31 (1979).

In this case, TIC purports to be bringing suit on behalf of its members. Amended Complaint at ¶ 4. An "association has Article III standing to bring a suit on behalf of its members when '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Funeral Consumers Alliance, Inc. v. Service Corp. Intern.*, 695 F.3d 330, 343 (5th Cir. 2012) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)).

With respect to the first prong of the *Hunt* test, when an "association seeking standing does not have traditional members, as here, the association establishes its standing by proving that it has 'indicia of membership': its members elect leadership, serve as the organization's leadership, and finance the organization's activities, including the case's litigation costs." *Id.* at 344, n.9 citing *Hunt*, 432 U.S. at 344–45.\; *Friends of the Earth Inc., v. Chevron Chem. Co.*, 129 F.3d. 826, 828 (5th Cir. 1998).

In this case, TIC has not demonstrated "indicia of membership" to assure the Court that it is capable of representing the individuals that it claims as "members" in this litigation.[5] Although Mr. Diaz referenced other "members" in his deposition, no other individual has testified that they consider themselves to be a "member" of TIC. *See, Chevron*, 129 F.3d at 829 (finding it relevant that individuals testified to being members of the association whose standing was challenged). No "members" elect the governing body; TIC is governed solely by Mr. Diaz. Mr. Diaz testified that he alone makes all membership decisions and keeps the membership roster in his own head. Diaz Depo. at p.35.

In *Chevron*, the Fifth Circuit found it important that, although the association was not formally organized under the laws of any state, it nevertheless possessed a "clearly articulated and understandable membership structure." 129 F.3d at 829. The same cannot be said for TIC, which has not offered any evidence that it has any organizational form or structure. To be sure, "[c]orporate formalities and formal membership structure are not constitutional requirements for associational standing." *Concerned Citizens Around Murphy v. Murphy Oil USA, Inc.*, 686 F. Supp. 2d 663, 669 (E.D. La. 2010) (citing *Hunt*, 432 U.S. at 344-345.) Nevertheless, TIC has

[5] At a hearing on this motion, the Court gave Plaintiffs the opportunity to provide further briefing on TIC's standing. In their supplemental briefing, Plaintiffs have offered no additional facts to support the claim that TIC possesses sufficient "indicia of membership" in order to have standing. Doc. No. 100.

the burden to show that it has *some* organizational structure in order to establish that it is a body capable of representing the interests of its purported "members." *See, American Legal Foundation v. F.C.C.*, 808 F.2d 84, 90 (D.C. Cir. 1987) (finding that association lacked standing where supporters did not play a role in selecting leadership, financing activities or setting the group's direction.).

In *Concerned Citizens Around Murphy v. Murphy Oil USA, Inc*, a district court in this circuit found that an association had standing because its members "participate directly in making and implementing day-to-day decisions." 686 F.Supp. 2d at 663 (finding that association had standing where group members regularly attended meetings, made decisions by consensus, and elected officers). In contrast, TIC has not provided evidence that it has regular (or irregular) meetings where its "members" could share ideas or participate in day-to-day decisions. To the extent TIC has "members," they do not appear to have a voice in steering the direction of the group. This calls into question whether TIC is the appropriate party to be representing these individuals' interests in this litigation. *See, Murphy Oil*, 686 F. Supp. 2d at 676 (citing *Hunt*, 432 U.S. at 375) ("The more informal an association, the less likely it may be to express its members' views or respond to their interests.")

TIC members do not appear to finance group activities. *Hunt*, 432 U.S. at 345 (financing group activates part of "indicia of membership" test). In addition, there is no record of TIC activities that would even require financing. At his deposition, Mr. Diaz testified that TIC's main activity is to disseminate information on indigenous rights through a YouTube channel that is operated solely by Mr. Diaz. Diaz Depo at p.30. With regard to evidence of activities that involve more members than just Mr. Diaz, TIC's evidence is scant. Other than the protest that is

the subject of this case, which originated by Mr. Diaz calling some friends, the only evidence of TIC group activity comes from Mr. Diaz's testimony that on three discrete instances "we" raised money for various worthy causes. Diaz Depo at p.40.[6] However, Mr. Diaz has not established (and no one has corroborated) that these fundraising activities were part of coordinated TIC activity. He fails to state whether those involved in the fundraising events were TIC members or simply friends.

With respect to the protest that is the subject of this lawsuit, Mr. Diaz asserts that one other TIC "member," Diana Ibanez, was also unlawfully arrested by Sgt. Simpkins. However, Mr. Diaz admits that Ms. Ibanez is no longer associated with the group. Diaz depo. at pp. 36-37. In addition, beyond his conclusory assertion, Mr. Diaz has failed to establish that Ms. Ibanez was ever a "member" of TIC. Mr. Diaz also states that there were other TIC "members" who were present at the hospital but were not arrested.[7] Diaz depo at p. 39. Although Mr. Diaz claims that these individuals were "TIC" members, he has not provided any evidence to corroborate this assertion.

Furthermore, Mr. Diaz has admitted that TIC is only representing his own personal interests. Diaz. Depo at pp.42-43.[8] Of course, Mr. Diaz is not a lawyer and this admission is not dispositive of TIC's standing. However, when viewed in conjunction with the paucity of evidence on TIC's status as an organization, Mr. Diaz's statement further supports the notion that TIC is not actually an organization capable of representing its purported "members." The point of standing analysis is to ensure that parties have a stake in the litigation. *Morton*, 405 U.S. at

[6] Mr. Diaz testified that the group had raised money for a funeral, for an individual to travel to New Mexico, and to provide charitable donations to miners in Mexico. Diaz Depo. at p.40.
[7] Mr. Diaz identified Mary Jane Martinez, Rhett Smith, and Genaro Solis as TIC "members" who were present but not arrested. Diaz. Depo. at p. 39.
[8] When asked who TIC was representing in this case, Mr. Diaz responded, "at this point, Antonio Diaz." Diaz Depo. at pp.42-43

732. Within that framework the "indicia of membership" test ensures that an association represents the individuals that it claims as members. *Hunt*, 432 U.S. at 345 (point of "indicia of membership" test is to ensure that an association can "express [members'] collective views and protect their collective interests."). TIC has not shown that it possesses an "indicia of membership" and consequently has failed to establish that it is a legally cognizable organization capable of representing its members. Accordingly, TIC does not have standing in this case.

In addition, even if TIC were an organization capable of representing its purported members, it has failed to establish the third prong of the *Hunt* test with respect to its prayer for damages. *See*, Diaz Depo at p. 37 (stating that TIC seeks money damages). Any claim for damages for TIC, which is suing on behalf of its members and not in its own capacity, would necessarily require the participation of individual members (namely Mr. Diaz). *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555 (1996) ("An association's action for damages running solely to its members would be barred for want of the association's standing to sue."). Accordingly, TIC does not have standing to pursue money damages.

2. *Standing for Injunctive Relief:*

Neither Mr. Diaz nor TIC has established that it has standing to pursue injunctive relief in this case. In *Lyons v. City of Los Angeles*, the Supreme Court held that an individual who had been subjected to an unlawful chokehold by the police lacked standing for injunctive relief absent a showing that he was likely to be subjected to similar abuse in the future. 461 U.S. 95, 112 (1983). Here, Plaintiffs allege in a conclusory fashion that they "hold frequent peaceful assemblies and protests." Amended Complaint at ¶ 29. Aside from the fact that Plaintiffs have

not provided any evidence to corroborate this assertion, they have failed to demonstrate a substantial likelihood that any such rally would be unlawfully impaired by the police. Without evidence that their First Amendment rights are likely to be curtailed in the future, Plaintiffs' fear of future police misconduct is no more particularized than that of any individual citizen or organization that exercises its First Amendment rights. *Lyons*, 461 U.S. at 112 (requiring plaintiff to show "sufficient likelihood that he will again be wronged in a similar way."). Under this standard, Plaintiffs lack standing to pursue injunctive relief. [9]

*3. Qualified Immunity for Sgt. Simpkins*

Sgt. Simpkins argues that he is entitled to summary judgment on the basis of qualified immunity. Doc. No. 94. Government officials performing discretionary functions are protected from civil liability under the doctrine of qualified immunity if their conduct violates no "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether qualified immunity applies, the courts apply the two-part test established in *Saucier v. Katz*, 533 U.S. 194 (2001), overruled in part by *Pearson v. Callahan*, 555 U.S. 223 (2009). Under this framework, the Court decides "(1) whether facts alleged or shown by plaintiff make out the violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct." *Pasco v. Knoblauch*, 566 F.3d 572, 579 (5th Cir. 2009).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009) (quoting *Saucier*, 533

[9] Assuming, for the sake of argument, that TIC is a legitimate organization with standing, it would still not have standing for injunctive relief because it has not shown that any of its members, individually or collectively, are likely to be unlawfully arrested in the future for exercising their free speech rights.

U.S. at 202). When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc). The Court has discretion over which prong of the qualified immunity test to address first. *Pearson*, 555 U.S. at 223.

Defendants argue that qualified immunity applies because Sgt. Simpkins had probable cause to arrest Mr. Diaz for obstructing the sidewalk. Doc. No. 94. Plaintiffs argue that probable cause is irrelevant to the qualified immunity analysis. In the alternative, Plaintiffs argue that a fact issue precludes summary judgment. Doc. No. 96.

In general, if an officer has arguable probable cause to arrest, he is entitled to qualified immunity. *Gliatta v. Jones*, 96 F.App'x. 249 (5th Cir. 2004); *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001). "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. McCowan*, 469 F.3d 386, 390 (5th Cir. 2006). A police officer has qualified immunity if he "reasonably but mistakenly conclude[s] that probable cause is present." *Hunter v. Bryant*, 502 U.S. 224, 227, (1991) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641, (1987)). Therefore, Sgt. Simpkins will enjoy qualified immunity if either: (1) he had probable cause to arrest; or (2) he made a reasonable mistake as to whether probable cause existed. While this standard appropriately provides police officers with leeway to make quick judgments about probable cause without fear of liability, case law indicates that it is not an insurmountable barrier for plaintiffs to overcome.

In *Mesa v. Prejean*, 543 F.3d 264 (5th Cir. 2008), Defendant Officer Prejean argued that qualified immunity applied because he had probable cause to arrest the plaintiff under the Louisiana criminal trespass statute. The Fifth Circuit disagreed and concluded that a fact issue existed that precluded summary judgment. *Id.* Since the parties disputed whether plaintiff was on the street or sidewalk, and how many times Officer Prejean had warned him to move, the court found that there was material question as to whether a reasonable officer could have thought plaintiff was violating the criminal trespass statute. Accordingly, Officer Prejean was not entitled to qualified immunity at the summary judgment stage.

In *Massey v. Wharton*, 477 F. App'x. 256 (5th Cir. 2012), Plaintiff Tonia Massey sued Defendant Officer Wharton for arresting her in violation of her First Amendment rights when she protested the tasing of her son during his arrest. In denying summary judgment on the basis of qualified immunity, the Fifth Circuit held that the validity of Tonia Massey's First Amendment claim hinged on the probable cause for her arrest. *Id.* Taking Ms. Massey's version of events as true, the court found that material fact issues existed as to whether Officer Wharton had probable cause, thereby precluding summary judgment.

This case is similar to both *Massey* and *Mesa*.[10] Viewing the facts favorably to Mr. Diaz, a genuine fact issue exists as to whether a reasonable officer in Sgt. Simpkins's position could have believed that he had probable cause. Section 42.03 of the Texas Penal Code prohibits individuals from "obstructing" public sidewalks. The core of Sgt. Simpkin's argument is that a reasonable officer could have believed that Mr. Diaz and his associates constituted a potential

[10] Sgt. Simpkins attempts to distinguish *Massey* by arguing that the entire factual record in that case was disputed, whereas here the overall record of what transpired is much clearer. Doc. No. 101. This argument mischaracterizes the relevant inquiry. When determining whether a fact issue exists when an officer claims that probable cause entitles him or her to qualified immunity, the Court looks only at the facts relevant to the decision to arrest. In this case, as in *Massey*, those facts are in dispute.

obstruction to the sidewalk. Doc. No. 94. The Texas Court of Criminal Appeals has concluded "that any potential obstruction must be capable of rendering the highway impassable or to render passage unreasonably inconvenient or hazardous." *Hardy v. State*, 281 S.W.3d 414, 424 (Tex. Crim. App. 2009).

Under Plaintiffs' version of events, seven individuals were present on a sidewalk that the parties generally agree to be "wider than most." Diaz Depo. at p. 69; *see also*, Johnson Depo. at p. 12 (admitting that it is a wide sidewalk). Pictures of the sidewalk provided by Plaintiffs demonstrate that it is not a main entry or exit point to the hospital. Doc. No. 96, Ex. 2. This evidence corroborates Plaintiffs' claim that the sidewalk was not a heavily-trafficked area. These facts are important because what a reasonable officer could legitimately view as rendering passage "unreasonably inconvenient" is necessarily context-specific and will turn on the physical characteristics and intended usage of the area that the officer claims is obstructed. Mr. Diaz has testified that the protesters were moving around "like a picket," so as not to present a static obstruction to any passerby. Diaz Depo. at p.81. Although apparently no individuals attempted to pass, Mr. Diaz asserts that he had instructed the group to let anyone by who sought to use the sidewalk. *Id.* at p.71.

Under this understanding of the facts, there is a genuine question as to whether a reasonable officer could have believed that he or she had probable cause to arrest Mr. Diaz for obstructing the sidewalk. Under Fifth Circuit precedent in *Massey* and *Mesa*, it is appropriate for this Court to deny Sgt. Simpkins's motion for summary judgment, even under the capacious standard afforded officers making judgment calls about probable cause.

*4. State Law Claims*

Plaintiffs have also asserted claims under sections 8 and 27 of the Texas Constitution. Doc. No. 92. Defendants argue that these claims are not properly before the Court because they were not addressed when this case was initially appealed to the Fifth Circuit. Doc. No. 101. In addition, Defendants urge that Plaintiffs have not met their burden of overcoming their Sgt. Simpkins's state law official immunity defense. *Id.* Plaintiffs assert that these claims are "supported by the same evidence that supports their First Amendment claims." Doc. No. 103. Texas law does not provide a cause of action for money damages for violations of either section 8 or 27 of the Texas Constitution. *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 146 (Tex. 1995); *Gillum v. City of Kerrville*, 3 F.3d 117 (5th Cir. 1993). Furthermore, neither TIC nor Mr. Diaz has standing to pursue injunctive relief on either state or federal claims. Plaintiffs also seek declaratory relief on their state law claims. The Texas Uniform Declaratory Judgments Act creates a state law cause of action for declaratory relief on Plaintiffs' Texas constitutional claims. Tex. Civ. Prac. & Rem. Code Ann. § 37.003; *Democracy Coal. v. City of Austin*, 141 S.W.3d 282, 295 (Tex. App.—Austin 2004, no pet.) (finding that plaintiffs could pursue declaratory relief on their free speech claims under Texas Constitution.). This Court has supplemental jurisdiction over these claims under 28 U.S.C. § 1367(a) because the state law claims arise from the same allegedly unlawful arrest as the federal claims. Accordingly, Plaintiff Diaz may pursue declaratory relief for on his state law claims.

**CONCLUSION**

Pursuant to the verbal agreement of the parties, all claims against Defendants Johnson, Tucker, and Andrade are DISMISSED. In light of the foregoing analysis, TIC lacks standing to

pursue its claims against Sgt. Simpkins. Mr. Diaz also lacks standing to pursue injunctive relief. Mr. Diaz may pursue declaratory relief only on his claims arising under the Texas Constitution. A genuine issue of material fact precludes Sgt. Simpkin's motion for summary judgment on the basis of qualified immunity. Therefore, the only claims that remain in this case are Mr. Diaz's federal constitutional claims for damages and declaratory relief against Sgt. Simpkins and his prayer for declaratory relief under the Texas Constitution.

SIGNED this 22nd day of January, 2014.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE